UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

YURI YUSOV,

                  Petitioner,

            v.

JAMES SHAUGHNESSEY, Supervisory Deportation Officer; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. ATTORNEY GENERAL; U.S. GOVERNMENT,

                  Respondents.

09 Civ. 56 (LBS)

**OPINION**

APPEARANCES

YURI YUSOV, *pro se*

LEV. L. DASSIN,
Acting United States Attorney
for the Southern District of New York
    Attorney for Respondents
BY:   SUE CHEN
        Special Assistant United States Attorney

SAND, J.:

Petitioner Yuri Yusov, an alien subject to a final order of removal and currently released from custody pursuant to an order of supervision, brings this *pro se* petition for a writ of habeas corpus requesting release from government supervision and other relief. For the following reasons, we deny Yusov's petition for habeas corpus.

**I.     Background**

Petitioner was born in 1960 in the town of Chernovtsi, which was then in the U.S.S.R. and is now in Ukraine. (Return Ex. 1; Return Ex. 10 ("Flynn Dec.") ¶11.)  On or about March 28, 1990, Yusov was admitted to the United States as a refugee, and he was given the status of lawful permanent resident on October 30, 1991.  (Return Ex. 1; Return Ex. 2.)

On October 2, 1993, Yusov was arrested and charged with first degree assault for cutting his roommate Pavel Shevchenko multiple times with a box cutter.[1]  (Pet'r's Reply Mem. 2; Return Ex. 7, at 1.)  On November 21, 1994, Yusov was convicted of attempted assault in the first degree in the Supreme Court of the State of New York.  (Pet. 2; Pet. Ex. 1.)  Petitioner pled guilty, but he claims that he is innocent and that this plea was coerced by his Legal Aid attorney.  (Pet. 2.)   He was sentenced to an indefinite term of imprisonment of twenty-eight months to seven years.  (Pet. 2; Pet. Ex. 1.)

Based on Yusov's conviction, on April 11, 1995, the former Immigration and Naturalization Service ("INS") issued an Order to Show Cause as to why he was not deportable as an alien who had been convicted of an aggravated felony and/or a crime

---

[1] According to Petitioner, he was defending himself from his mentally ill roommate who had decided to kill him.  (Pet. 2.)

involving moral turpitude.² (Return Ex. 3.) On April 16, 1996, an Immigration Judge found Yusov deportable under the Immigration and Nationality Act ("INA"), and ordered Yusov deported to Ukraine.³ (Return Ex. 4; Return Ex. 5.) Yusov timely appealed this decision, which was affirmed by Bureau of Immigration Affairs ("BIA") on February 28, 1997. (Return Ex. 6.) Yusov did not file a petition for review of the BIA's decision with the Court of Appeals for the Second Circuit. (Resp. Mem. Opp. Pet. 4.) While these deportation proceedings were pending in 1996, Yusov was released from INS detention on bond. (Return Ex. 6.)

On January 20, 2000, Yusov filed a petition for a writ of habeas corpus challenging his state conviction in the United States District Court for the Eastern District of New York. The INS deferred enforcement of the deportation order pending resolution of the habeas petition. (Return Ex. 7.) The district court dismissed Yusov's habeas petition as time-barred on August 13, 2003, and he was taken into custody by Immigration and Customs Enforcement ("ICE") for deportation. (Return Ex. 7; Flynn Dec. at ¶ 10.) The Court of Appeals for the Second Circuit denied Yusov's appeal of the district court's decision on February 20, 2004. (Return Ex. 7, at 9.)

ICE attempted to deport Yusov to Ukraine, but Ukraine refused to accept him. Yusov had left the country just before it gained independence; therefore, he was not considered a Ukrainian citizen under Ukrainian law. (Flynn Dec. ¶ 11.) Based on Yusov's claims that he is Jewish and that his grandmother was Jewish, ICE then contacted the Israeli consulate to see if Israel would accept him. (Flynn Dec. ¶ 12.) The

---

² This Order to Show Cause was brought pursuant to sections 241(a)(2)(A)(i) and 241(a)(2)(A)(iii) of the Immigration and Nationality Act of 1952, as amended, 8 U.S.C. § 1251(a)(2)(A(iii) (1994) ("INA").
³ The Immigration Judge also found that Yusov was not eligible for asylum or withholding of deportation under the INA.

Israeli consulate informed ICE that it could not review Yusov's immigration application until his Jewish lineage was proven through copies of birth or death certificates from the last three generations.  (Flynn Dec. ¶ 12.)  ICE has so far been unable to obtain the documents from the Russian authorities on its own.  (Flynn Dec. ¶¶ 14-15.)  Yusov told ICE that he has no desire to emigrate to Israel.  (Flynn Dec. ¶ 16.)

On March 22, 2004, Yusov was released from ICE detention pursuant to an order of supervision because ICE was unable to deport him within the time prescribed by law.  (Return Ex. 9.)  In the order, the supervisory Deportation Officer ordered that Yusov "be placed under supervision and permitted to be at large" subject to certain conditions.  (Return Ex. 9.)  The order required Yusov to appear in person at ICE's request; to submit to medical or psychiatric examinations at ICE's request; to provide information under oath regarding his nationality, circumstances, habits, associations, and activities; to refrain from travel outside the New York/New Jersey metropolitan area for more than 48 hours without first notifying ICE; to give ICE written notice of any change of residence or employment within 48 hours of the change; to assist ICE in obtaining necessary travel documents; and not to commit any crimes.  (Return Ex. 9.)  The order threatened him with revocation of employment authorization and/or incarceration for violation of these conditions.  It also instructed Yusov to report in person to the New York ICE office every week; this requirement was later relaxed to allow Yusov to report every three months.  (Flynn Dec. ¶ 17.)

Petitioner filed the instant habeas petition on January 6, 2009.  He seeks (1) "liberation from indefinite . . . custody;" (2) a declaration of his good moral character; (3)

4

restoration of his status of legal permanent resident; and (4) a "[r]ecommendation for naturalization, or an Order to facilitate his naturalization." (Pet. 9; Pet'r's Reply Br. 10.)

**II.     Discussion**

The Court notes at the outset that Petitioner only seeks review of "violations of [his] [c]onstitutional rights since September 2003." (Pet'r's Reply Mem. 5.) Yusov has clarified that the discussion of his conviction for attempted assault was "background information about the circumstances that resulted in his unlawful perpetual bondage," but argues that "this Court is still empowered by the U.S. Constitution to review [the] constitutionality of Petitioner['s] . . . indefinite custody[, i.e., his release under an order of supervision.]" (Pet'r's Reply Mem. 6.) Nor could we review his state conviction in the instant petition, as an alien is not permitted to attack collaterally the criminal conviction underlying his deportation order in a habeas proceeding challenging that order.[4] *See, e.g.*, *Arriaga v. Mukasey*, 521 F.3d 219, 224 (2d Cir. 2008).

The Court is without power to consider Yusov's request to recommend or facilitate his naturalization. District courts retain jurisdiction in matters of naturalization only in circumstances of "denial and delay." *Ajlani v. Chertoff*, 545 F.3d 229, 236 (2d Cir. 2008); *see also* 8 U.S.C. §§ 1421(c), 1447 (permitting federal court review of denials of applications for naturalization and delays of over 120 days in rendering a decision after a naturalization examination). Petitioner does not allege that he has applied for citizenship, so we lack jurisdiction to consider this request.

Yusov's requests to restore his status as a lawful permanent resident and to declare him to be of good moral character are in effect a request to review the BIA's deportation order. Because the Immigration Judge found that Yusov's conviction was for

---

[4] As noted below, Yusov's Petition in effect challenges his deportation order.

5

an "aggravated felony," Yusov is by statute deemed ineligible to be found a person of "good moral character," which is a prerequisite for naturalization. *See* 8 U.S.C. § 1101(f)(8). The same order of removal terminated his lawful permanent resident status, as an alien loses that status upon the administrative finalization of the alien's removal order. *See* 8 C.F.R. § 1001.1(p).

However, the REAL ID Act of 2005, 8 U.S.C. § 1252 ("REAL ID Act"), stripped district courts of jurisdiction to review removal orders. *See De Ping Wang v. Department of Homeland Sec.*, 484 F.3d 615, 616 (2d Cir. 2007) ("[D]istrict courts may no longer review removal orders via habeas corpus." (*citing* 8 U.S.C. § 1252)). Pursuant to the REAL ID Act, review of a removal order may only be sought in the appropriate court of appeals. *Id.* Nor may we transfer the instant petition to the Court of Appeals for the Second Circuit pursuant to 28 U.S.C. § 1631. While we must transfer a petition that was "mistakenly, but timely, filed in the district court," *De Ping Wang*, 484 F.3d at 616 (*citing Paul v. INS,* 348 F.3d 43, 46-47 (2d Cir. 2003)), Yusov's petition for review was not timely. A petition for review of an order of removal must be filed "not later than 30 days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1). Compliance with the time limit is a "strict jurisdictional prerequisite." *See Zaluski v. INS,* 37 F.3d 72, 73 (2d Cir. 1994) (per curiam). Yusov's order of removal became final when the BIA dismissed his appeal on February 28, 1997, more than twelve years ago.[5] (Flynn Dec. ¶ 9.) As such, we may not transfer his petition for review of the final order of removal to the Court of Appeals for the Second Circuit. *See De Ping Wang*, 484 F.3d at 617.

---

[5] Even if it were appropriate in the instant case, we lack the authority to extend the deadline for excusable neglect or good cause. *See Malvoisin v. I.N.S.*, 268 F.3d 74, 76 (2d Cir. 2001). Nor has Yusov argued or provided evidence that the time limit was or should be tolled.

It is unclear if Yusov raises claims regarding the conditions of his ICE detention, from which he was released in March 2004; to the extent this is the case, a habeas petition is not the appropriate vehicle to raise these claims.  *See Copes v. McElroy*, No. 98 Civ. 2589 (JGK), 2001 WL 830673, at *6 (S.D.N.Y. July 23, 2001) ("[I]t is well-settled that a habeas petition is the appropriate means to challenge the actual fact or duration of one's confinement, . . . whereas a civil rights claim is the proper means to challenge the conditions of one's confinement.") (citations and internal quotations omitted); *see also Heck v. Humphrey*, 512 U.S. 477, 281 (1994); *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

### a. Post-removal-period Supervision under 8 U.S.C. § 1231

The INA provides that if an alien subject to a removal order is not removed within 90 days (the "removal period"), 8 U.S.C. § 1231(a)(1)(A), he "shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3).  Those regulations provide that supervision orders shall contain various reporting requirements, limitations on travel without prior ICE approval, and a mandate that the alien "continue efforts to obtain a travel document and assist the Service in obtaining a travel document," *inter alia*.  *See* 8 C.F.R. § 241.5(a).  Neither the statute nor the regulations contain a time limit on the period of supervision.  *Kalombo v. Shanahan*, No. 07 Civ. 11350 (PKC), 2009 WL 1788589, at *4 (S.D.N.Y. Jun. 23, 2009).

Yusov contests his potentially indefinite supervision as a violation of his right to due process of law.  The Court has jurisdiction to review constitutional challenges to post-removal period detention and supervision pursuant to 28 U.S.C. § 2241(c)(3).  *See Zadvydas v. Davis,* 533 U.S. 678, 687-88 (2001); *Kalombo*, 2009 WL 1788589, at *3-4.

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court dealt with the closely related issue of constitutional limits on the length of a deportable alien's detention. Although *Zadvydas* was a statutory case, the Court rendered its decision against the background of constitutional due process concerns regarding detention not ordered in a criminal proceeding. *Id.* at 690. To avoid constitutional problems, the Court construed the INA to limit post-removal-period detention "to a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689. The Court adopted a presumption that detention of up to six months was reasonable. *Id.* at 701.

The *Zadvydas* Court then stated that if detention is no longer constitutional because the likelihood of removal is too remote, the proper alternative is supervision. "[I]f removal is not reasonably foreseeable, the [habeas] court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 699-700. The Court elaborated that "we nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions. . . . The choice . . . is not between imprisonment and the alien 'living at large.' It is between imprisonment and supervision under release conditions that may not be violated." *Id.* at 695-96.

The "few courts" that have examined the constitutionality of potentially indefinite supervision after *Zadvydas* have concluded that the government possesses wide latitude

in supervising deportable aliens. *Kalombo*, 2009 WL 1788589, at *5 ("Detention entails a complete deprivation of liberty of movement. Supervision, on the other hand, is substantially less onerous and, if the conditions imposed are reasonably related to legitimate enforcement needs, may be appropriate even if indefinite. . . . [T]here is no inherent temporal limitation on an order of supervision in such context."); *Mahmoud v. Cangemi*, No. 04 Civ. 1815 (PA), 2006 WL 1174214, at *3 (D. Minn. Apr. 12, 2006) ("The Court in *Zadvydas* explicitly envisioned that the alien's release would be conditional . . . pursuant to an [order of supervision]."); *Nguyen v. B.I. Inc.,* 435 F. Supp. 2d 1109, 1115 (D. Or. 2006) (applying rational basis review to intensive one year supervision program for aliens subject to orders of supervision); *see also Demore v. Kim*, 538 U.S. 510, 528 (2003) ("[W]hen the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal."); *Mathews v. Diaz,* 426 U.S. 67, 79-80 (1976) ("In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens."). Like Judge Castel in *Kalombo*, we read *Zadvydas* and the relevant statutory and constitutional law to impose "no inherent temporal limitation on an order of supervision . . . ."[6] 2009 WL 1788589, at *5.

However, we decline to hold that district courts lack jurisdiction to review the specific conditions imposed in orders of supervision. The REAL ID Act has stripped courts of jurisdiction to review decisions committed to the discretion of the attorney

---

[6] It is true that the *Nguyen* court emphasized that the program in question had a likely duration of one year at most in finding it constitutional. *Nguyen*, 435 F. Supp. 2d at 1115. But the *Zadvydas* Court implicitly endorsed indefinite supervision when it held that deportable aliens with no foreseeable possibility of deportation should be released under supervision. *See Zadvydas,* 533 U.S. at 695-96. Additionally, in the case at bar, it is possible that Yusov's cooperation in obtaining birth certificates and other documents to prove his Jewish lineage could facilitate his speedy deportation to Israel. (Flynn Dec. ¶¶ 14-15.)

9

general.  *See* 8 U.S.C. § 1252(a)(2)(B) ("[N]o court shall have jurisdiction to review . . . any . . . decision or action of the Attorney General . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General . . . other than the granting of relief under section 1158(a) of this title.").  Respondents argue that the INA's language providing that post-removal period aliens "shall be subject to supervision under regulations prescribed by the Attorney General," 8 U.S.C. § 1231(a)(3), was a sufficiently clear vesting of discretion in the Attorney General to bar review.  2009 WL 1788589, at *5.

The Court of Appeals for the Second Circuit recently stated that "the question is not whether [the provision in question] require[s] an exercise of discretion. . . .  Rather, the important question is whether the text of the subchapter in which the relevant provisions appear 'specifie[s]' that the 'decision' is 'in the discretion of the Attorney General.'"  *Ruiz v. Mukasey*, 552 F.3d 269, 275 (2d Cir. 2009) (*citing Nethagani v. Mukasey,* 532 F.3d 150 (2d Cir. 2008)) (alterations and quotations omitted).  For the statute to commit a decision to the discretion of the Attorney General for the purposes of the jurisdiction stripping provision, "additional language specifically rendering that determination to be within the agency's discretion [is needed] (*e.g.,* 'in the discretion of the Attorney General,' 'to the satisfaction of the Attorney General,' etc.)."  *Ruiz*, 552 F.3d at 154-55 (*citing Nethagani,* 532 F.3d at 154-55) (alteration omitted).  While 8 U.S.C. § 1231(a)(3) requires the Attorney General to exercise discretion in prescribing supervision regulations, its text does not so clearly vest the Attorney General with discretion as to satisfy the standard explicated in *Ruiz* and *Nethagani*.  It lacks "additional language" specifying that supervision conditions are committed to the Attorney General's

10

discretion.  *Ruiz*, 552 F.3d at 154-55.  It also provides that any prescribed regulations "shall" include several provisions[7] and that restrictions on conduct shall be "reasonable."  8 U.S.C. § 1231(a)(3).  Therefore, we read *Ruiz* to dictate that jurisdiction is present to review the conditions imposed in orders of supervision.[8]

The conditions of Yusov's supervision are plainly envisioned by the statute; they are either included in the statute itself or are "reasonable" provisions pursuant to the

---

[7] The statute states:

> If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions requiring the alien--
>
> (A) to appear before an immigration officer periodically for identification;
>
> (B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;
>
> (C) to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and
>
> (D) to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien.

8 U.S.C. § 1231(a)(3).

[8] The analysis of other courts interpreting nearly identical language in a different INA provision providing that "[t]he admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General may by regulations prescribe" provides further reason to doubt that such language serves to remove jurisdiction.  8 U.S.C. § 1184; *see Hovhannisyan v. U.S. Dept. of Homeland Sec.*, 624 F. Supp. 2d 1135, 1143-44 (C.D. Cal. 2008) (arguing that language in 8 U.S.C. § 1184 was insufficient to strip jurisdiction under the REAL ID Act because other provisions of the INA more explicitly specified that certain decisions are made "*in the discretion* of the attorney general *and under such regulations* as the attorney general may prescribe.") (*citing* 8 U.S.C. § 1184(a)(1); 8 U.S.C. § 1184(q)(3)); *cf. Royal Siam Corp. v. Chertoff*, 484 F.3d 139, 143 (1st Cir. 2007) (declining to rule on the issue of jurisdiction  because it was "freighted with uncertainty," but noting that "[t]he text of . . . 8 U.S.C. § 1184(a)(1) is considerably less definitive in its commitment of authority to agency discretion than other statutes that have been found to animate the jurisdictional bar."); *Mahaveer, Inc. v. Bushey*, No. CIV A. 04-1275 (GK), 2006 WL 1716723 (D.D.C. June 19, 2006) (relying on a lack of statutory factors to guide the Attorney General's prescription of regulations, which are present in the instant case, to hold that similar statutory language in 8 U.S.C. § 1184(a)(1) functions to bar judicial review).  *But see Eastern Carpet House, Inc. v. Department of Homeland Sec. ex rel. Chertoff*, 430 F. Supp. 2d 672, 675 (S.D. Tex. 2006) ("Here, the statute in question, 8 U.S.C. § 1184, provides that 'the admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General may by regulations prescribe.'  By including the permissive "may" this section affords the Attorney General discretion to decide who may be admitted to the country as a nonimmigrant and under what conditions such admission may occur. . . .  It therefore falls within the scope of § 1252(a)(2)(B)(ii)'s jurisdiction stripping power.")

regulations.  *See* 8 U.S.C. 1231(a)(3);8 C.F.R. § 241.4(e).  Because the "Due Process Clause does not require [the government] to employ the least burdensome means" when it deals with deportable aliens, *Demore*, 538 U.S. at 528, we apply rational basis review to determine the constitutionality of the conditions of supervision. *See Nguyen*, 435 F. Supp. 2d at 1115.  A government action "survives rational basis review if it is 'rationally related to a legitimate government interest.'"  *Id.* (*quoting Lawrence v. Texas*, 539 U.S. 558, 579 (2003)).  The goals of "reducing the number of absconding aliens" and "accounting for and being able to produce any alien who becomes removable" are legitimate government interests, *Nguyen*, 435 F. Supp. 2d at 1115, as is protecting "public safety and national security." (Flynn Dec. ¶ 1.)

       The government need only demonstrate a "reasonable fit" between the governmental purpose and the "means chosen to advance that purpose."  *Reno v. Flores*, 507 U.S. 292, 305-06 (1993).  Yusov is required to report once every three months, which allows the Deportation Officer to ensure that Yusov remains locatable[9] and fit for release under an order of supervision by collecting up-to-date contact information and checking for evidence of recent criminal activity.  (Return Ex. 9; Flynn Dec. ¶¶ 5-6.)  The requirement that Yusov not commit any crimes protects "public safety and national security," and the requirement that he assist in obtaining travel documents facilitates the goal of deportation.  (Flynn Dec. ¶¶ 1, 7.)  The requirement that he submit to medical and psychological evaluations should the government so request provides the government with information so that it can modify the terms of Yusov's supervision should circumstances change.  (*See* Return Ex. 9; Flynn Dec. ¶ 6.)  The requirement that Yusov

---

[9] The same rationale supports the requirement that Yusov notify ICE of a change of address or employment.  (Return Ex. 9.)

obtain advance approval to travel outside the New York/New Jersey area for more than 48 hours at a time provides ICE with a means of ensuring that Yusov does not abscond should deportation become possible. (Return Ex. 9; Flynn Dec. ¶ 6.) The collection of data under oath provides ICE with a means of locating Yusov should deportation become possible and he does not report for deportation.[10] (Return Ex. 9; Flynn Dec. ¶ 5.) These conditions of Yusov's supervision are rationally related to the aforementioned legitimate government interests.[11]

### III. Conclusion

Based on the foregoing, we dismiss Yusov's habeas petition.[12]

So ordered.

Dated: Nov. 18, 2009

New York, NY

U.S.D.J.

---

[10] In *U.S. v. Witkovich*, 353 U.S. 194, 202 (1957), the Supreme Court held that the INA "authoriz[ed only] questions reasonably calculated to keep the Attorney General advised regarding the continued availability for departure of aliens whose deportation is overdue."). There is no indication that any questions asked of Yusov or likely to be asked of Yusov would run afoul of the Court's statutory construction in *Witkovich*. (*See* Flynn Dec. ¶ 5.)

[11] Like the *Kalombo* court, we "need not [here] consider the frequency with which it may be appropriate for the administrative agency to review the conditions [of supervision] either *sua sponte* or on application." *Kalombo*, 2009 WL 1788589, at *5.

[12] The Court has examined all claims in Yusov's petition; to the extent Yusov raises any claims not discussed, the Court has determined that they are without merit and may properly be dismissed.

13